MARR vs. HILL & HAYNES.

The declarations of a slave, in connection with, and explanatory of a symptom or appearance of disease, are competent evidence to prove that the slave was at the time diseased, in an action brought against a purchaser for the purchase money of the slave.

APPEAL from Monroe Circuit Court, (In Chancery.)

KIRTLEY *for Appellant.*

The errors assigned and insisted on for a reversal of the decree, are —

1st. The admission by the Court to the jury of incompetent and improper evidence given by complainants and objected to by defendant.

2nd. That the Circuit Court gave for complainants improper instructions, objected to by defendant.

3rd. That the Circuit Court improperly overruled defendant's motion to set aside the finding of the jury, and for a new trial of the issues.

4th. That the Circuit Court improperly decreed for complainants, and made the injunction perpetual.

HOWELL *for Appellees.*

NAPTON, J., *delivered the opinion of the Court.*

This was a bill in chancery to enjoin a judgment at law obtained by Jefferson T. Marr, administrator of Henry Marr, deceased, against the complainants, Hill and Haynes. The note upon which the judgment had been rendered, was given by the complainants in consideration of a negro woman and her infant child, bought by said Hill at the administrator's sale. The bill charged that this negro woman was unsound at the time of the sale; that this unsoundness was known to the defendant, Marr; that she was represented by the crier to be sound, by the directions of said Marr, and the purchase was made under the influence of these false and fraudulent representations. The answer denies the allegation of unsoundness and fraudulent representations. Under the provisions of the chancery practice act, as they stood at the trial, the complainant and defendant put down the several issues they desired to be determined, and their issues were submitted to a jury. The verdict of the jury was, that the defendant, Marr, did request the crier to represent the negro woman in controversy as sound and healthy, and that said crier did so represent her in the hearing of complainant and other bystanders; that said woman was not sound or healthy at said time, but diseased, and of no value; that said defendant, Marr, knew the said woman to be unsound and unhealthy, and caused the representations of her health to be made by the crier for the purpose of alluring bidders and defrauding them. In consequence of which verdict the Chancellor

decreed in accordance with the prayer of the bill, and perpetually enjoined so much of the judgment as covered the value of the woman.

Upon the trial of the issues before the jury, certain portions of the testimony were objected to. One *Davis* testified that he had boarded several weeks with Henry Marr, (the testator,) and had known Marr to chastise the woman frequently for her obstinacy and complaints. On being interrogated in relation to the character of these complaints, the witness answered, that he had heard the woman make complaints to her mistress *about her health,* and say *her master put too much on her for her health.* Another witness, Pavy, saw the woman at his house shortly before her sale at public auction, and told her he wanted to hire her, but she told him she would not suit him, as she was unwell more than people thought. The witness told her she was breeding, *to which she replied,* "there was something else." Mrs. Bryant, another witness, testified that she was *laughing at and plaguing* the negro woman, (in relation to her supposed pregnancy, it may be inferred,) when the negro bursted into a cry, and said, "no, Miss Mary, there is something worse the matter with me, but they all don't believe it."

These were the several items of testimony admitted, to which exceptions were taken.

It appeared from the evidence that a few months after the sale, the negro woman was found to be diseased with the dropsy, of which disease she died. The evidence detailed above was for the purpose of showing the existence of this disease before the sale, and the knowledge of its existence by Marr, the defendant. There was also other evidence tending to this same purpose, but not being excepted to at the trial, it is needless to rehearse it.

The bill of exceptions shows that a number of instructions were asked for and given on both sides, but the instructions themselves are not preserved, except four, which were objected to, and to which exceptions were taken. These in substance declared to the jury, that if they were satisfied of the unsoundness of the slave at the sale, and that the defendant knew it, or had the means of knowing it, or had reason to believe that the woman was unsound, &c., they must find that issue for complainant.

The only points presented by the case are those arising out of the admission of the statements of the negro and the instructions of the Court. The first point has been decided differently in different Courts. Turney vs. Knox, 7 Mon. 88 ; 4 McCord's S. C. R. In the case determined by the Supreme Court of Kentucky, a majority of the Judges

excluded such testimony :—Judge Bibb placing its exclusion upon the ground that the negro himself, had he been alive, could not have been examined; and Judge Mills conceding that such declarations would have been admissible, had they been made to a surgeon or physician. Judge Owsley considered the testimony admissible as a part of the *res gestæ.* We are unable to see any reasonable objection to such testimony, when it is strictly limited to the point it is designed to elucidate. The question is as to the nature and character of the disease under which the negro labors, or whether there is any disease at all. In addition to the appearances and actions of the patient, what can better show this than his exclamations or declarations as to the afflictions or pains suffered? They are a part of the *res gestæ,* and are as much so when made in the presence of an unprofessional observer as when made to the physician or surgeon who is in attendance. The mere declaration of a slave that he or she was in bad health, unaccompanied with proof of any symptoms or appearance, indicative of a disease, would be clearly inadmissible; it would be mere hearsay, and could not be permitted to effect the rights of the owner or any one else. But the declarations made to the witness Pavy, and to Mrs. Bryan, are not of this character. It must be inferred from their statements, though it is not so stated in direct terms, that the woman about whom the present controversy has arisen, had the appearance of being in a state of pregnancy, and that the witnesses were disposed in a good humored way to rally her upon her supposed situation. What more expressive proof could be given of the woman's own convictions, that a more dangerous and fatal cause produced these symptoms, than "her bursting into tears," and declaring that something worse ailed her? We do not see any objections to the declarations made to either of these witnesses, but the declarations testified to by Davis, as they were not explanatory of any symptoms or appearances of ill health noticed by the witness, are certainly liable to objection.

The phraseology of the instructions has been objected to, because the jury were told that if the defendant knew, or had the means of knowing the unsoundness of the negro, &c., he was liable to the action. This objection has but little weight—the jury had previously to find that there was a representation of soundness made by the defendant or his agent; that this representation was false, and surely, if the false representation was made in relation to a matter about which the defendant might have easily informed himself, his knowledge of its falsity would be presumed. Indeed, it might be questioned whether the issue in relation to the defendant's knowledge of the slave's unsoundness was not entirely immaterial.

If the false representation amounted to a warranty, it was certainly superfluous to enquire farther into the defendant's knowledge of its falsity. But supposing the issue material, the instruction is substantially correct, as the only mode in which a jury could ascertain the fact of the defendant's knowledge of the negro's disease, would be to ascertain that he was in a situation in which, in all human probability, he must have known it. If, therefore, the jury were convinced that the defendant had the means of ascertaining what was the character and condition of the slave's health, or in other words, was placed in such a situation, or stood in such a relation to her as would almost preclude the possibility of such a disease escaping his observation, they would be well warranted in concluding that the defendant did know at least enough to have deterred him from selling her as a sound negro.

Judge McBride concurring, the judgment of the Circuit Court is affirmed.